IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CAVALIER WINSTON DEVELOPMENT, LLC and THE GOODMAN-GABLE-GOULD COMPANY, d/b/a GOODMAN-GABLE-GOULD/ADJUSTERS INTERNATIONAL, | ) |
| | ) |
| Defendants, | ) |
| | )   1:23-CV-478 |
| and | ) |
| | ) |
| CAVALIER WINSTON DEVELOPMENT, LLC, | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GREAT AMERICAN INSURANCE COMPANY, | ) |
| | ) |
| Counterclaim-Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This case concerns an insurance coverage dispute over storm damage to apartments under construction in Winston-Salem, North Carolina. Before the court is the motion by Defendant Goodman-Gable-Gould Company, d/b/a Goodman-Gable-Gould/Adjusters International ("GGG") to dismiss the complaint (Doc. 17) and the motion by Great American Insurance Company ("Great American") to

dismiss the counterclaim against it filed by Cavalier Winston Development, LLC ("Cavalier") (Doc. 22). As to GGG's motion, Great American has responded in opposition (Doc. 21), and GGG has replied (Doc. 25). As to Great American's motion, Cavalier has responded in opposition (Doc. 27), and Great American has replied (Doc. 29). For the reasons set forth below, GGG's motion will be granted and Great American's motion will be denied.

I. BACKGROUND

   A. The Complaint

The facts outlined in Great American's complaint (Doc. 1), which are taken as true for the purpose of GGG's motion to dismiss, show the following:

Great American is a corporation organized under the laws of the State of Ohio with its principal place of business in Cincinnati. (Id. ¶ 2.) Cavalier is a limited liability company ("LLC") organized under the laws of the State of North Carolina. (Id. ¶ 4.) Its two members are also LLCs and are citizens of Virginia. (Id.) The individual members of those LLCs are likewise citizens of Virginia. (Id.) GGG is a corporation organized under the laws of the State of Maryland that maintains its principal place of business in Baltimore and acted as Cavalier's insurance adjuster at certain times. (Id. ¶¶ 5, 30, 31.) Great American alleges an amount-in-controversy in excess of $75,000. (Id. ¶ 6.)

In recent years, Cavalier renovated two former manufacturing

2

buildings into residential apartments north of downtown Winston-Salem, North Carolina. (Id. ¶ 21.) In connection with the construction, Great American and Cavalier entered into an insurance contract ("the Policy") that affords certain coverage to Cavalier. (Id. ¶ 10.) A copy of the Policy is attached to the complaint. (Doc. 1-2.) The covered causes of loss exclude certain listed causes, such as rainwater and faulty workmanship. (Doc. 1 ¶¶ 13, 14.)

The rainwater exclusion provides: "[Great American] will not pay for a 'loss' caused by or resulting from any of the following . . . Damage from rain, sleet, snow, hail, ice or dust (all whether or not driven by wind) to Covered Property not in a 'fully enclosed building or structure' except as provided in F. Optional Coverages, 6. Rain, Sleet, Snow, Hail or Ice." (Id. ¶ 15.) Great American alleges that Cavalier did not apply for, request, or pay a premium for the referenced optional coverage. (Id. ¶ 17.) The faulty workmanship exclusion provides, "[Great American] will not pay for 'loss' caused by or resulting from the following causes . . . faulty, inadequate or defective . . . planning . . . design, specifications, workmanship, repair, construction, renovation, remodeling . . . or . . . maintenance." (Id. ¶ 19.)

During the construction, Cavalier submitted three claims. The first claim was for physical damage incurred by rainwater on July 2, 2021. (Id. ¶ 23.) Great American issued a reservation of

3

rights letter explaining that certain provisions of the Policy, including the rainwater exclusion, may preclude coverage. (Id. ¶ 25.) Ultimately, Great American issued a declination letter stating that the rainwater and faulty workmanship exclusions precluded coverage. (Id.) Great American alleges that portions of the building's exterior envelope and siding were incomplete, which created an opening protected only with temporary plastic covering. (Id. ¶ 24.)

Cavalier's second claim was for physical damage incurred by a fire on August 31, 2021. (Id. ¶ 27.) Great American issued approximately $20,414.38 in indemnity, although Great American alleges that Cavalier never identified what repairs it made. (Id.)

Cavalier's third claim sought recovery for physical damage incurred by rainwater on January 3, 2022. (Id. ¶ 28.) Shortly thereafter, Cavalier retained GGG to act as its public adjuster and entered into a public adjuster contract that assigned a portion of any recoverable indemnity proceeds to GGG. (See Doc. 1-3 ("The Insured hereby assigns to Goodman-Gable-Gould/Adjusters International, all monies due or to become due from said insurance companies to the extent of the fee above mentioned.").) Great American alleges that this assignment was expressly prohibited by the Policy, which prohibits Cavalier from transferring its "rights and duties under [the] Policy" without Great American's "written consent." (Doc. 1 ¶ 20.)

4

Following its investigation of the third claim, Great American issued a reservation of rights letter on February 2, 2022, explaining that provisions of the Policy, including the rainwater exclusion, precluded coverage. (Id. ¶ 31.) In total, Cavalier sought $4,851,784.79 in total losses, in addition to a "Not Determined" total of purported loss of a historic tax credit. (Id. ¶ 33.) Great American issued a declination letter on October 3, 2022, contending that coverage was precluded because the building's exterior envelope remained incomplete. (Id. ¶ 35.) During the course of the investigation, GGG wrote letters to Great American rebutting its coverage positions. (Id. ¶¶ 31, 36.)

Great American seeks a declaratory judgment stating the following:

> 1. Cavalier is in breach of the Policy by virtue of its purported assignment of rights under the Policy via its Public Adjuster Contract with GGG;
>
> 2. Alternatively, Great American is not bound by the Public Adjuster Contract entered into by Cavalier and GGG;
>
> 3. The damages sought via the First and Third Claims do not comprise direct physical "loss" to Covered Property from a Covered Cause of Loss;
>
> 4. The First and Third Claims are precluded from the Policy's coverage pursuant to the Rainwater Exclusion;
>
> 5. The First and Third Claims are precluded from the Policy's coverage pursuant to the Faulty Workmanship Exclusion;
>
> 6. Great American has satisfied its obligations pursuant to the Policy and each of the Claims;

5

> 7. Great American is entitled to an award of all reasonable costs and attorney's fees incurred in prosecuting this action; and
>
> 8. Great American is entitled to an award of any additional relief that this Court deems just and proper.

(Id. at 13-14.)

### B. Cavalier's Counterclaim

Cavalier filed a counterclaim on November 2, 2023. (Doc. 16.) The facts alleged therein that are not already stated above, which are taken as true for purposes of Great American's motion to dismiss, show the following:

On January 3, 2022, a windstorm caused damage to Cavalier's construction project, removing the "temporary roof membrane and temporary window enclosures." (Id. countercl. ¶¶ 15-17.) The resulting openings did not exist prior to the windstorm. (Id. countercl. ¶ 19.) Cavalier contends, therefore, that it was wind, not rain, that caused the damage, and that wind damage is a "covered peril that is not otherwise excluded pursuant to the terms of the Policy." (Id. countercl. ¶¶ 30, 31.)

Cavalier seeks the following relief:

> A. That Great American have and recover nothing as to its Declaratory Judgment cause of action and all relief it seeks in the Complaint;
>
> B. That this Court enter an Order dismissing with prejudice the Declaratory Judgment cause of action asserted by Great American;
>
> C. That this Court enter an Order declaring that

6

coverage exists pursuant to the Policy for the Wind Event
and resulting loss;

    D. That this Court enter an Order declaring Great
American in default of its obligations pursuant to the
Policy for declining coverage for the Wind Event and
resulting loss;

    E. That this Court enter an Order affirmatively
stating that coverage exists under the Policy for Wind
Event and resulting loss;

    F. That this Court enter an Order compelling Great
American's full payment of the loss claimed by CWD;

    G. That this Court award to CWD applicable
interest, as well as attorneys' fees and costs incurred
by CWD in litigating this action; and

    H. That this Court award any additional and further
relief deemed just and proper.

(Id. at 15-16.)

GGG now moves to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted (Doc. 17), and Great American moves to dismiss the counterclaim on the same bases (Doc. 22). Both motions are ready for resolution.

**II. ANALYSIS**

    **A. GGG's Motion to Dismiss the Complaint**

GGG moves to dismiss the complaint against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing there is no "actual controversy" between it and Great American. (Doc. 18 at 1.) Because the actual controversy requirement often, as here, sounds in ripeness principles, the court reviews the

7

motion as one for lack of subject matter jurisdiction.  See Wyatt, Virgin Islands, Inc. v. Gov't of V.I., 385 F.3d 801, 806 (3d Cir. 2004) ("Interrelated to . . . what constitutes a 'case of actual controversy' . . . is the ripeness doctrine." (internal citations omitted)); Kettler Int'l, Inc. v. Starbucks Corp., 55 F. Supp. 3d 839, 846 n.6 (E.D. Va. 2014) (observing the standard would be the same under both rules where the movant raises a facial, not factual, challenge to the complaint because the court must still accept factual allegations as true under both rules).

In support of its argument that there is no actual controversy, GGG contends the only allegations against it are that it entered into a contract with Cavalier to act as an adjuster and that, in that capacity, GGG sent correspondence to Great American advocating Cavalier's position in the coverage dispute.  (Doc. 18 at 6.)  While Cavalier "assign[ed]" to GGG a specified percentage of "all monies due or to become due from said insurance companies" as a "result of the loss and/or damage," (Doc. 1-3 (adjuster contract)), GGG contends there is no actual controversy between it and Great American as to such payment.  (Id. at 7.)  Instead, GGG views the risk of litigation between it and Great American as hypothetical – namely, that Great American would have to indemnify Cavalier, Cavalier would have to refuse to pay GGG, and GGG would have to assert a right to insurance proceeds against Great American.  (Doc. 25 at 6-7.)

8

In response, Great American argues there is an adverse relationship between it and GGG because GGG's letter to Great American states that "we [i.e., GGG and Cavalier] maintain that coverage should be afforded for this loss [i.e., the third claim]." (Doc. 21 at 8.)[1] Further, it contends that because the Policy contains a non-assignment clause, the fact that Cavalier assigned its rights to GGG demonstrates a "definite and concrete dispute." (Id. at 9.) Moreover, even if there were no actual controversy, Great American contends, GGG is a necessary party under Federal Rule of Civil Procedure 19. (Id. at 9-10.)

Federal courts sitting in diversity may enter declaratory judgments pursuant to 28 U.S.C. § 2201 if three conditions are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion

---

[1] Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss into one for summary judgment. Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015); see also Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (stating that a 12(b)(1) non-movant receives the "same procedural protection as she would receive" under 12(b)(6) when facial challenge is raised); Fed. R. Civ. P. 12(d) (limiting consideration of matters outside of the pleadings on 12(b)(6) motion). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Here, the letter was expressly incorporated by reference into and attached to the complaint. (Doc. 1 ¶ 36; Doc. 1-6.)

9

in exercising jurisdiction. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937) (explaining that the "actual controversy" requirement for a declaratory judgment is synonymous with the Article III requirements). The Declaratory Judgment Act does not require courts to issue declaratory relief; "[r]ather, a district court's decision to entertain a claim for declaratory relief is discretionary." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421 (4th Cir. 1998) (per curiam); see also Wilton v. Seven Falls Co., 515 U.S. 277, 290 (1995).

The Fourth Circuit has enumerated several factors that a district court should consider in determining whether to exercise its discretion to entertain a declaratory judgment action. See Aetna, 139 F.3d at 422. These include whether declaratory relief "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (internal quotation marks); see also Columbia Gas Transmission, LLC v. Vlahos, 94 F. Supp. 3d 728, 737 (E.D. Va. 2015) (observing actual controversy where "a plaintiff has an objective and reasonable apprehension of future litigation, which is of sufficient immediacy and reality, that declaration of legal rights will terminate and afford relief from uncertainty,

10

insecurity, and controversy giving rise to the proceeding" (internal quotation marks omitted)).

Here, Great American has failed to allege an "actual controversy" between it and GGG. As alleged in the complaint, GGG's letter to Great American was sent on Cavalier's behalf. (Doc. 1 ¶ 31 ("After receiving a response from Cavalier via its public adjuster, GGG . . . .").) That GGG would stand to benefit from indemnification, through Cavalier, does not create an actual controversy between GGG and Great American. In fact, the addendum to the adjuster contract states that the fee Cavalier owed GGG "is the obligation of the insured, not the insurer." (Doc. 1-3 at 2.) While Great American seeks a declaration that it is not bound to the public adjuster contract between GGG and Cavalier, (Doc. 1 at 13-14), no party has alleged that it is bound. See Volvo Const., 386 F.3d at 592 (requiring that the complaint allege an "actual controversy").

Tellingly, Great American has cited no on-point case where, for example, an interested person, such as a claims adjuster, created an actual controversy by advocating for a rights-holder. In fact, the one case Great American cites in a footnote (Doc. 21 at 8 n.2), Maryland Casualty Company, demonstrates, by counter-analogy, why there is no actual controversy here. Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273-74 (1941) (stating that an actual controversy existed because third party to the

11

insurance policy had sued the insured in state court).

Even if there were technically an actual controversy here, the court would exercise its discretion to dismiss the action as against GGG. Aetna Cas. & Sur. Co., 139 F.3d at 421; Hogs & Heroes Found. Inc. v. Heroes, Inc., 202 F. Supp. 3d 490, 498 (D. Md. 2016) (finding a lack of actual controversy and stating that "even if [the court] had jurisdiction here, it would still decline to exercise it"). At this stage, GGG is correct that any actual controversy as to it is highly speculative. Cf. South Carolina v. United States, 912 F.3d 720, 727 (4th Cir. 2019) (stating that harm is too speculative when it "lies at the end of a 'highly attenuated chain of possibilities'" (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 410 (2013)).

Great American's arguments as to Rule 19 fare no better. Rule 19(a)(1) requires a person to be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, Great American has not shown that GGG is a necessary

12

Case 1:23-cv-00478-TDS-JEP   Document 30   Filed 03/06/24   Page 12 of 16

party. Even if, as Great American argues, GGG were entitled to a portion of any insurance proceeds Cavalier receives in the lawsuit, no party has sought the court's intervention for such a transfer. It is therefore unpersuasive that "[a]bsent GGG's presence in the lawsuit, the [c]ourt cannot accord complete relief" to Great American. (Id. at 21 at 10.) The court is similarly unpersuaded that there is any risk that Great American will incur "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii); see State Farm & Cas. Co. v. Singleton, 774 F. Supp. 2d 773, 775-76 (D.S.C. 2009) (rejecting argument that named defendant was a necessary party under Rule 19 where there was no actual controversy under Declaratory Judgment Act); Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir. 1980) (affirming denial of motion to join non-party under Rule 19 where defendant could "only theorize the possibility" that the third party would "initiate suit against it"). As noted above, Cavalier's potential fee to GGG "is the obligation of the insured, not the insurer." (Doc. 1-3 at 2.)[2]

Accordingly, GGG's motion to dismiss Great American's claim against it will be granted.

---

[2] Great American's theory would seem to require courts to include parties' lawyers in litigation wherever a contingency fee arrangement exists with counsel. Of course, no court does that. Rather, if and when any payment is made, the payor can decide how, if at all, it wishes to include the assignee in acknowledging receipt of the proceeds to avoid any disputes.

13

**B. Great American's Motion to Dismiss**

Great American has moved to dismiss Cavalier's counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 23 at 1.) Principally, Great American argues that Cavalier's counterclaim is duplicative because it advocates for the "mirror-image" of the relief sought in the complaint. (Id. at 10.) In response, Cavalier contends that the relief it seeks is not redundant. (Doc. 27 at 4.) Specifically, Cavalier points to its request for a declaration of coverage and for payment as relief exclusive of the inverse of Great American's requested relief. (Id.)

While Great American styles its motion as one for dismissal, courts have typically considered redundant counterclaim arguments as a motion to strike a pleading under Federal Rule of Civil Procedure 12(f), which states that the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." See, e.g., Joe Hand Promotions, Inc. v. Hayes, No. 1:18CV531, 2019 WL 4246646, at *4 (M.D.N.C. Sept. 6, 2019) (considering redundancy argument on motion to strike); Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F. Supp. 1158, 1161 n.3 (E.D. Pa. 1978) (rejecting dismissal for redundancy and collecting cases striking pleadings); Am. Gen. Life Ins. v. Bagley, No. 2:13CV89, 2013 WL 5916824, at *5 (D. Utah Nov. 4, 2013) (construing motion to dismiss as a motion to strike);

14

Daily v. Fed. Ins. Co., No. C 04-3791, 2005 WL 14734, at *6-7 (N.D. Cal. Jan. 3, 2005) (reviewing motion to strike for allegedly redundant counterclaim).

Courts are wary of striking declaratory judgment counterclaims early in a case because "it is very difficult to determine whether the declaratory-judgment counterclaim really is redundant." 6 Fed. Prac. & Proc. Civ. § 1406 (Wright & Miller) (3d ed. 2023). Some courts have exercised their Rule 12(f) authority where a "complete identity of legal and factual issues exist[s]" between the complaint and the counterclaim. Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr., No. C.A. 09-300, 2010 WL 3023402, at *6 (D. Del. July 30, 2010). Others have required at least a "mirror image" between the complaint and the counterclaim. Am. Gen. Life Ins., 2013 WL 5916824, at *3.

Here, Great American has not demonstrated that Cavalier's counterclaim is the mirror image of its complaint. There is undoubtedly some overlap between the two. But Cavalier seeks affirmative relief that is not merely the inverse of Great American's claim. For example, Great American seeks a declaration that it is not obligated to indemnify Cavalier. (Doc. 1 at 13-14.) If Great American does not ultimately prevail in obtaining this relief, the court's order would not necessarily include the relief that Cavalier seeks — i.e., a judgment declaring that Great American is obligated to indemnify it. (Doc. 16 at 15-16); see

15

also Fid. Nat. Title Ins. Co. v. Captiva Lake Invs., LLC, 788 F. Supp. 2d 970, 973 (E.D. Mo. 2011) (rejecting same argument where insurer alleged no coverage and insured counterclaimed for order declaring coverage and obligation to indemnify). Consequently, Great American's motion will be denied.[3]

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant GGG's motion to dismiss (Doc. 17) is GRANTED and Counterclaim-Defendant Great American's motion to dismiss (Doc. 22) is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

March 6, 2024

---

[3] It is unclear why Cavalier did not counterclaim for breach of contract instead, but Great American does not challenge Cavalier's use of a declaratory judgment claim as a vehicle for recovery. See Hanback v. DRHI, Inc., 94 F. Supp. 3d 753, 758 (E.D. Va. 2015) (stating that a declaratory judgment action is "inappropriate" where "a breach of contract has already occurred and damages have already accrued" because a declaratory judgment would not "steer 'conduct away from a breach of contract'") (citing cases), aff'd, 647 F. App'x 207 (4th Cir. 2016); Volvo Constr. Equip., 386 F.3d at 593-94 (discussing purpose of declaratory judgment as avoiding future litigation). Nor has anyone addressed the propriety of Cavalier's prayer for a declaration of "full payment of the loss claimed," which seeks money damages, as part of its equitable counterclaim. The court therefore expresses no opinion on these questions.